UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
FORT WAYNE DIVISION

| | |
|---|---|
| TRUSTEES OF THE TEAMSTERS UNION LOCAL NO. 142 PENSION TRUST FUND, | ) ) ) |
| Plaintiffs, | ) ) |
| v. | ) CIVIL NO. 2:07cv433 ) |
| ENTERPRISE TRUCKING AND WASTE HAULING, INC., | ) ) ) ) |
| Defendant. | ) |

## OPINION AND ORDER

This matter is before the court on a motion for summary judgment by the plaintiffs, Trustees of the Teamsters Union Local No. 142 Pension Trust Fund ("Trustees"), on August 15, 2008. The defendant, Enterprise Trucking and Waste Hauling, Inc. ("Enterprise"), failed to file a response. The court held a telephone conference with Jewell Harris Sr., Enterprise's registered agent, on December 5, 2008. Harris indicated that Enterprise would obtain counsel and file a response on or before January 15, 2009. However, Enterprise has not obtained counsel and has not filed a response. The court has reviewed the motion for summary judgment and, for the following reasons, will grant the motion.

### Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c). However, Rule 56(c) is not a requirement that the moving party negate his opponent's claim. Fitzpatrick v. Catholic Bishop of Chicago, 916 F.2d 1254, 1256 (7th Cir.

1990). Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery, against a party "who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and in which that party will bear the burden of proof at trial." Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). The standard for granting summary judgment mirrors the directed verdict standard under Rule 50(a), which requires the court to grant a directed verdict where there can be but one reasonable conclusion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986). A scintilla of evidence in support of the non-moving party's position is not sufficient to successfully oppose summary judgment; "there must be evidence on which the jury could reasonably find for the plaintiff." Id. In Re Matter of Wildman, 859 F.2d 553, 557 (7th Cir. 1988); Klein v. Ryan, 847 F.2d 368, 374 (7th Cir. 1988); Valentine v. Joliet Township High School District No. 204, 802 F.2d 981, 986 (7th Cir. 1986). No genuine issue for trial exists "where the record as a whole could not lead a rational trier of fact to find for the nonmoving party." Juarez v. Ameritech Mobile Communications, Inc., 957 F.2d 317, 322 (7th Cir. 1992)(quoting Matsushita Electric Industrial Co., Ltd. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Initially, Rule 56 requires the moving party to inform the court of the basis for the motion, and to identify those portions of the "pleadings, depositions, answers to interrogatories, and admission on file, together with the affidavits, if any, which demonstrate the absence of a genuine issue of material fact, Celotex, 477 U.S. at 323. The non-moving party may oppose the motion with any of the evidentiary materials listed in Rule 56(c), but reliance on the pleadings alone is not sufficient to withstand summary judgment. Goka v. Bobbitt, 862 F.2d 646, 649 (7th Cir. 1988); Guenin v. Sendra Corp., 700 F. Supp. 973, 974 (N.D. Ind. 1988); Posey v. Skyline

Corp., 702 F.2d 102, 105 (7th Cir.), cert. denied, 464 U.S. 960 (1983).

So that the district court may readily determine whether genuine issues of material fact exist, under Local Rule 56.1, the moving party is obligated to file with the court a "Statement of Material Facts" supported by appropriate citation to the record to which the moving party contends no genuine issues exist. In addition, the non-movant is obligated to file with the court a "Statement of Genuine Issues" supported by appropriate citation to the record outlining all material facts to which the non-movant contends exist that must be litigated. See, Waldridge v. American Hoechst Corp. et al., 24 F.3d 918 (7th Cir. 1994). In ruling on a summary judgment motion the court accepts as true the non-moving party's evidence, draws all legitimate inferences in favor of the non-moving party, and does not weigh the evidence or the credibility of witnesses. Anderson, 477 U.S. at 249-251, 106 S.Ct. at 2511. Furthermore, in determining the motion for summary judgment, the court will assume that the facts as claimed and supported by admissible evidence by the moving party are admitted to exist without controversy, except to the extent that such facts are controverted in the "Statement of Genuine Issues" filed in opposition to the motion. L.R. 56.1

Substantive law determines which facts are material; that is, which facts might affect the outcome of the suit under the governing law. Anderson, 477 U.S. at 248. Irrelevant or unnecessary facts do not preclude summary judgment even when they are in dispute. Id. The issue of fact must be genuine. Fed. R. Civ. P. 56(c), (e). To establish a genuine issue of fact, the non-moving party "must do more than simply show that there is some metaphysical doubt as to the material facts." Matsushita, 475 U.S. at 586; First National Bank of Cicero v. Lewco Securities Corp., 860 F.2d 1407, 1411 (7th Cir. 1988). The non-moving party must come forward with

specific facts showing that there is a genuine issue for trial. Id. A summary judgment determination is essentially an inquiry as to "whether the evidence presents a sufficient disagreement to require submission to a jury or whether it is so one-sided that one party must prevail as a matter of law." Anderson, 477 U.S. at 251-252. Finally, the court notes that, "[i]t is a gratuitous cruelty to parties and their witnesses to put them through the emotional ordeal of a trial when the outcome is foreordained" and in such cases summary judgment is appropriate. Mason v. Continental Illinois Nat'l Bank, 704 F.2d 361, 367 (7th Cir. 1983).

## Discussion

The Trustees set forth the following facts, supported by affidavit and other supporting exhibits. Enterprise was a party to a Collective Bargaining Agreement ("CBA") with Teamsters Union Local No. 142 ("Union") (Affidavit of Jay Smith, ¶ 4). On March 5, 2007, the parties entered an "Extension and Retroactivity Agreement" which extended the original expiration date of the CBA until April 30, 2007. (Smith Aff. at ¶ 5). On September 11, 2007, the Union notified Enterprise that it no longer represented Enterprise's employees, retroactive to the expiration of the Extension and Retroactivity Agreement. (Smith Aff at ¶ 6). The Union terminated representation after Enterprise continuously defaulted in contribution payments, resulting in four lawsuits within a decade. (See: Case No.: 2:98-CV-105; Case No.: 2:99-CV-139; Case No.: 2:05-CV-084; Case No.:2:07-CV-100, all filed in the United States District Court in the Northern District of Indiana, Hammond Division).

After the Union's withdrawal of representation, Jay Smith, Fund Manager of the Pension Fund, calculated Enterprise's withdrawal liability using a format provided by the Fund's actuaries, the Segal Company, and pursuant to 29 U.S.C. §§ 1382, 1391. (Smith Aff. at ¶ 7). Jay

4

Smith prepared a report, listing Enterprise's withdrawal liability at $330,735.00. (Smith Aff. at ¶ 7. On September 26, 2007, Jay Smith wrote a letter to Enterprise enclosing the withdrawal liability assessment and quarterly installment schedule, as required by 29 U.S.C. § 1399(b)(1), advising it that the first payment was due November 1, 2007. (Smith Aff. at ¶ 8). When Enterprise failed to pay the first quarterly withdrawal liability installment, Jay Smith requested the Fund's collection counsel to notify Enterprise of its default and opportunity to cure pursuant to 29 U.S.C. § 1399(c)(5). (Smith Aff. at ¶ 9). That letter advised Enterprise of its opportunity to cure the default by making the first quarterly installment payment in the amount of $22,435.00 by November 28, 2007; and, that its failure to cure the default would result in the entire withdrawal liability amount of $330,735.00 being immediately due and payable. (Smith Aff. at ¶ 9).

In response, on November 28, 2007, Enterprise requested a review of the withdrawal liability assessment. (Smith Aff. at ¶ 10). However, Enterprise failed to pay the quarterly assessment by the November 28, 2007 deadline, and therefore, the full withdrawal liability assessment of $330,735.00 is due. (Smith Aff. at ¶ 10).

In a letter dated March 27, 2008, Plaintiffs' counsel notified Enterprise's previous counsel that the Pension Fund's review was complete, and that it found the withdrawal liability assessment to be accurate and appropriate. (Smith Aff. at ¶ 11). More than 180 days have passed since Enterprise's request for review, and Enterprise has failed to pay the full withdrawal liability amount and failed to request arbitration of any dispute that it may have with the withdrawal liability assessment. (Smith Aff. at ¶ 12).

The Restated Trust Agreement and Declaration of Trust to which Enterprise is bound

pursuant to the CBA, and the Employer Contribution Collection Policy require Enterprise to pay interest in the amount of 10% per annum, which is equivalent to .83% per month. (Smith Aff. at ¶ 13). Interest thus accrues at the rate of $2,745.10 per month ($330,735.00 x .83% = $2,745.10), which makes the total amount of interest which has accrued from November 28, 2007, through August 28, 2008 amount to $24,705.90 ($2,745.10 x 9 months = $24,705.90). (Smith Aff. at ¶ 13). Further, the Restated Trust Agreement and Declaration of Trust and the Employer Collection Policy require Enterprise to pay liquidated damages in the amount of 20%, thus totaling $66,147.00 ($330,735.00 x 20% = $66,147.00). (Smith Aff. at ¶ 14). Finally, the Restated Trust Agreement and Declaration of Trust and the Employer Collection Policy require Enterprise to pay attorney fees and costs, which to the date of the filing of the summary judgment motion amounted to $5,103.83. (Smith Aff. at ¶ 15). As a result, the total amount owed to the Pension Trust Fund by Enterprise (as of August 15, 2008) for withdrawal liability, accrued interest, liquidated damages, and attorney fees and costs is $426,691.73. (Smith Aff. at ¶ 16).

In light of these uncontested facts, the Trustees argue that under the MPPAA, Enterprise is obligated to make withdrawal liability payments. The Multiemployer Pension Plan Amendments Act ("MPPAA") imposes liability on an employer withdrawing from a multiemployer pension plan. 29 U.S.C. §§ 1381, 1391 (2000). Congress wanted "to ensure that [withdrawing] employer[s] would not leave a plan with vested pension obligations that were only partially funded." Central States, Southeast and Southwest Areas Pension Fund v. Bomar National, Inc., 253 F.3d 1011, 1014 (7th Cir. 2001). The withdrawal liability "ensures that the financial burden of [the] employees vested pension benefits will not be shifted to the other employers in the plan and, ultimately, to the Pension Benefit Guaranty Corporation." Id.

When a withdrawal from a pension fund occurs, the plan sponsor determines the amount of withdrawal liability owed and sends the employer a notice and demand for payment. 29 U.S.C. § 1399(b)(1); Bomar National, Inc., 253 F.3d at 1015. If an employer disagrees with the assessment of withdrawal liability it may ask the plan sponsor to review the assessment, who must then make a reasonable review and notify the employer of its decision. 29 U.S.C. § 1399(b)(2)(A)-(B). If an employer disputes the plan sponsor's review, it may initiate arbitration within 60 days after the earlier of either the plan sponsor's review, or 120 days after the initial withdrawal demand. 29 U.S.C. § 1401(a).

The initiation of arbitration proceedings, however, "does not suspend the employer's obligation to pay in accordance with the schedule of payments assessed by the plan." Bomar National, Inc., 253 F.3d at 1015. The MPPAA expressly states that, "withdrawal liability shall be payable in accordance with the schedule set forth by the plan sponsor . . . notwithstanding any request for review or appeal of determinations of the amount of such liability or schedule." 29 U.S.C. § 1399(c)(2). Congress enacted this "pay now, dispute later" scheme because it "foresaw that the purpose of MPPAA would be undermined if employers could postpone paying their debts to pension funds by engaging in protracted litigation over withdrawal liability." Crown Clothing, Inc., 27 F.Supp.2d at 512. Finally, "if an employer remains in default, a plan sponsor may bring suit in federal or state court to compel withdrawal liability payments." 29 U.S.C. §1451(b) &(c); Crown Clothing, Inc., 27 F.Supp.2d at 512.

It is undisputed that from the initial withdrawal to the date of the filing of the summary judgment motion, the Union and Pension Fund have fulfilled every requirement under 29 U.S.C. § 1381 et. seq., as noted in Crown Clothing, Inc. and in Bomar National, Inc. Despite the Union

7

and Pension Fund's compliance to these federal laws, Enterprise has failed to pay any of the withdrawal liability and has failed to request arbitration.

First, the Union notified the employer of its intent to withdraw representation. The Fund Manager, Jay Smith, then calculated the withdrawal liability assessment pursuant to 29 U.S.C. §§ 1382, 1391. Next, the Fund wrote a letter to Enterprise enclosing the withdrawal liability assessment and payment schedule, as required by 29 U.S.C. § 1399(b)(1). Enterprise failed to respond to the letter to request a review and failed to pay the first quarterly withdrawal liability installment by the deadline. Therefore, counsel wrote to Enterprise to notify it of its default and opportunity to cure the default pursuant to 29 U.S.C. § 1399(c)(5). On November 28, 2007, a week after the initial deadline passed, Enterprise sent a letter requesting review. The Pension Fund accepted the request, under 29 U.S.C. § 1399(b)(2)(B), and after review, promptly notified Enterprise of its decision that the withdrawal liability assessment was accurate and appropriate. Finally, Enterprise had one of two options; either to pay the obligation in full, or to request arbitration while continuing to pay in accordance with the schedule of payments assessed by the plan. More than 60 days have passed since the plan sponsor's review and more than 180 days have passed since the original request for review, thereby closing the time period for a request for arbitration. However, Enterprise has neither made any payments nor made a request for arbitration. The Union and Pension Fund have fulfilled every requirement under 29 U.S.C. § 1381 et. seq., in <u>Crown Clothing, Inc.</u> and in <u>Bomar National, Inc</u>. As a result, there are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law.

The Trustees also assert that Enterprise remains obliged to pay liability withdrawals

contributions, despite a union-mandated withdrawal. The Union notified Enterprise of its intent to withdraw representation of Enterprise's employees. As a result, Enterprise is deemed to have effectuated a complete withdrawal from the Pension Fund.

While the Circuit courts are split on allowing equitable exceptions from withdrawal liability, these exceptions are rare and are only granted when an employer overcomes its burden of proving a "non-colorable" claim. Crown Clothing, Inc., 27 F.Supp.2d at 512-513. The Third Circuit has never recognized such an exception and the Fifth and Seventh Circuits only allow for such a rare exception if the employer has enough evidence to prove that the claim is not "colorable." Id.; (Bomar National, Inc., 253 F.3d at 1016-1017) (The Seventh Circuit in Bomar National, Inc. rejected the equitable exception when the employer failed to demonstrate that the Pension Plan had a noncolorable claim.) A claim is "colorable" if it is "more likely than not to have some merit." Id.

In Crown Clothing, the employer argued that the Trustees forced withdrawal from the fund and imposed the withdrawal liability because of an underlying motive to pressure the employer into accepting a collective bargaining agreement. Id. at 514. The employer used this argument as evidence to prove that the claim was noncolorable and that it would suffer irreparable harm if forced to make the withdrawal liability payments. Id. The court rejected the employer's argument and found that the claim was colorable because "the guidelines regarding relief from liability in the context of union-mandated withdrawals make it more likely than not that an arbitrator will find Crown [employer] obligated to pay some amount of withdrawal liability." Id. at 515. The court held that the Trustees' claim was colorable, despite the fact that the employer would suffer harm were it forced to make interim payments. Id.

9

Overall, if a union-mandated withdrawal occurs, the guidelines for withdrawal remain intact and the employer is still required to pay the withdrawal liability. Id. at 512-513. The Pension Benefit Guarantee Corporation explained that forgiveness of all withdrawal liability would "unjustly enrich the employer, who has received the benefit of coverage for its employees while the collective bargaining agreement was in effect, without paying its full share of the cost of the benefits that were earned." Id.

The Pension Fund has had to file four lawsuits against Enterprise because of continuous defaults in contribution payments over the past decade. The Union's reason for termination of representation is evident through Enterprise's history of refusal to provide benefits to the Teamster member employees. Further, the Pension Fund has fulfilled every requirement under 29 U.S.C. § 1381 et. seq, while Enterprise has neither made any payments of its withdrawal liability, nor requested arbitration to which the deadline has passed. Therefore, as concluded in the first part of this discussion, there are no genuine issues of material fact and Plaintiffs are entitled to judgment as a matter of law.

Under the MPPAA, an employer is obliged to pay the withdrawal liability determined by the plan sponsor. 29 U.S.C. §1399(b). In addition, Plaintiff is entitled to interest, liquidated damages, costs and attorney's fees. Crown Clothing, Inc., 27 F.Supp.2d at 515.

First, Plaintiffs are entitled to the withdrawal liability in the amount of $330,735.00. (Smith Aff. at ¶ 7). Second, The Restated Trust Agreement and Declaration of Trust to which Enterprise is bound pursuant to the CBA, and the Employer Contribution Collection Policy require Enterprise to pay interest in the amount of 10% per annum, which is equivalent to .83% per month. (Smith Aff. at ¶ 13). Interest thus accrues at the rate of $2,745.10 per month

($330,735.00 x .83% = $2,745.10), which makes the total amount of interest which has accrued from November 28, 2007, through August 28, 2008 amount to $24,705.90 ($2,745.10 x 9 months = $24,705.90). (Smith Aff. at ¶ 13).

Third, the Restated Trust Agreement and Declaration of Trust and the Employer Collection Policy require Enterprise to pay liquidated damages in the amount of 20%, thus totaling $66,147.00 ($330,735.00 x 20% = $66,147.00). (Smith Aff. at ¶ 14).

Finally, the Restated Trust Agreement and Declaration of Trust and the Employer Collection Policy require Enterprise to pay attorney fees and costs, which to the date of the filing of the summary judgment motion amounts to $5,103.83. (Smith Aff. at ¶ 15).

As a result, the total amount owed to the Pension Trust Fund by Enterprise for withdrawal
liability, accrued interest, liquidated damages, and attorney fees and costs (as of the date of the filing of the motion for summary judgment) is $426,691.73. (Smith Aff. at ¶ 16).

## Conclusion

On the basis of the foregoing, the Trustees' motion for summary judgment [DE 23] is hereby GRANTED. The Trustees may, if desired, file an updated request for additional interest and attorney fees within 30 days of the date of this order.

Entered: February 6, 2009.

s/ William C. Lee<br>
William C. Lee, Judge<br>
United States District Court